IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 8, 2006

## EARL RAY TROTTER v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Bedford County**
**No. 10509   Lee Russell, Judge**

**No. M2005-02905-CCA-R3-PC - Filed October 5, 2006**

The petitioner, Earl Ray Trotter, pled guilty in the Bedford County Circuit Court to attempted second degree murder, especially aggravated burglary, and especially aggravated robbery.  He received a total effective sentence of twenty-five years incarceration in the Tennessee Department of Correction.  Thereafter, the petitioner filed a petition for post-conviction relief, alleging that his trial counsel was ineffective.  The post-conviction court denied the petition, and the petitioner now appeals.  Upon review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and J.C. MCLIN, JJ., joined.

Karla D. Ogle, Fayetteville, Tennessee, for the appellant, Earl Ray Trotter.

Paul G. Summers, Attorney General and Reporter; Blind Akrawi, Assistant Attorney General; William Michael McCown, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

The petitioner was indicted by the Bedford County Grand Jury for attempted second degree murder, especially aggravated burglary, and especially aggravated robbery.  On January 20, 2005, the petitioner pled guilty to all charges with no agreement regarding sentencing.  At the guilty plea hearing, the State recited the factual basis for the plea.  The State contended that the petitioner and two co-defendants, Kenny Porter and Ellis Baucom, Jr., decided to rob an elderly gentleman, Claude Thomas, who lived alone in the country.  The men believed that the victim had "guns and other

things of value and a large sum of money that he kept in his house." Late in the evening of June 26, 2004, the men went to the victim's residence and knocked on his door. When the victim opened the door, the men went in and demanded money. The victim gave the men his wallet, in which was a large sum of money, but the men were not satisfied. Baucom held a gun on the victim while the petitioner searched the house. The victim was "pistol whipped" during the search. At some point, the victim managed to grab one of his guns. The petitioner fired two shots at the victim, striking him once in the face causing very serious injuries. Ultimately, the investigation focused on the petitioner and his co-defendants. The State concluded the recitation of facts by stating:

> All three [perpetrators] were interviewed and they all implicated themselves and one another including this defendant having given a statement implicating that he did go in with the intent to rob Mr. Thomas. That he – when Mr. Thomas attempted to defend himself, that he did fire a shot that struck Mr. Thomas in the face. He did take some of the money at force from Mr. Thomas.

The petitioner agreed with the State's recitation, explicitly admitting to the trial court his complicity in the crimes. At the conclusion of the guilty plea hearing, the trial court scheduled a sentencing hearing for March 21, 2005.

On the date of the sentencing hearing, the petitioner agreed to accept a sentence of nine years each for attempted second degree murder and especially aggravated burglary conviction. The agreement provided that the petitioner was to serve thirty percent of these sentences in confinement before becoming eligible for release. Additionally, the petitioner agreed to accept a sentence of twenty-five years for the especially aggravated robbery conviction, one hundred percent of which he was to serve in confinement. All three sentences were to be served concurrently with each other but consecutively to an outstanding sentence in Sumner County. The trial court accepted the agreement.

Subsequently, the petitioner filed a petition for post-conviction relief, alleging, among other things, numerous allegations of ineffective assistance.[1] At the post-conviction hearing, the petitioner's trial counsel testified that he met with the petitioner three times prior to the entry of the guilty pleas. Counsel stated that he was appointed to the petitioner's case after another attorney had been removed. Counsel reviewed the discovery provided to the previous attorney. The discovery materials included crime scene photographs and medical records. However, there was no DNA evidence to connect the petitioner with the crimes. Counsel felt that he had a good understanding of the State's case against the petitioner. Counsel discussed in detail with the petitioner the available defenses, the likelihood of conviction, and the possible punishments the petitioner could receive upon conviction.

---

[1] All issues except the ineffectiveness of counsel have been abandoned on appeal.

Counsel conceded that he did not visit the crime scene. He stated that he had planned to argue for mitigating the petitioner's sentence at the sentencing hearing, but the petitioner entered into an agreement regarding his sentences.

Counsel said that he did not present any character witnesses for the petitioner because the petitioner did not want "a hearing." Additionally, counsel did not ask for a mental evaluation of the petitioner because the petitioner did not seem to need an evaluation. Counsel was aware that the petitioner used drugs, specifically noting that the petitioner used drugs on the night of the offenses.

Counsel asked the petitioner about his statement to police. The petitioner stated that he had been advised of his Miranda rights, he understood those rights, and he waived his rights before giving the statement. The petitioner did not indicate that he was under the influence of an intoxicating substance at the time he gave his statement to police. Counsel stated that he could find no basis on which to file a motion to suppress the statement. Counsel said that he did not file any other pretrial motions.

Counsel stated that he knew the victim had been shown a photographic lineup, and counsel had examined the pictures used in the lineup. Counsel acknowledged that the victim identified someone other than the petitioner from the lineup; however, counsel said that other than discussing the issue with the petitioner, he was unsure of how he could have pursued the identification issue further. Counsel conceded that he did not speak with Stephen Patrick Gossey, the person who had been identified by the victim. Counsel stated, "It certainly would have been a defense if [Gossey] did it, but considering [the petitioner] was saying I did it, I didn't see any need to talk to anyone else."

Counsel said that he did legal research in connection with the petitioner's case, including researching the elements of the crimes charged and sentencing. Counsel also said that he would have investigated any witnesses or pursued any leads suggested by the petitioner. However, the petitioner never asked counsel to speak with additional witnesses. Counsel asserted, "If he'd asked me to do something, I usually do it."

Counsel stated that he could not recall if he investigated any witnesses who were not identified by the petitioner, but he was sure that he never spoke with the victim. Counsel did not speak with the petitioner's co-defendants, but he did speak with their attorneys. Counsel stressed that the petitioner never denied his involvement in the crimes; in fact, the petitioner gave a statement to police detailing his role in the crimes. Counsel maintained that the petitioner never indicated that he wanted to go to trial. Counsel recalled that the petitioner's statement to police was a "big part" of the decision to enter guilty pleas. Counsel asserted that the petitioner "was just looking to get the best deal he could."

Counsel recalled that prior to entry of the petitioner's guilty pleas, the State offered to allow the petitioner to plead guilty to the charged offenses in exchange for a sentence of thirty-five years, one hundred percent of which would be served in confinement. The petitioner rejected that offer and

countered with an offer to plead guilty to the offenses if the accompanying sentences required that he serve no more than fifteen years. The State rejected the petitioner's offer and countered with a proposal for an accompanying sentence of twenty-five years, with one hundred percent of the sentence to be served in confinement. The petitioner also rejected that offer and decided to enter open guilty pleas to the offenses and allow the trial court to determine the length of the sentences. However, on the day of the sentencing hearing, the petitioner agreed to a total effective sentence of twenty-five years to be served at one hundred percent. Counsel stated that the petitioner had been aware of the offer of twenty-five years for at least several days prior to accepting the sentence.

Counsel recalled that the district attorney's office sent him a copy of a letter that the petitioner had submitted to the district attorney after the entry of his guilty pleas but prior to the sentencing hearing. In the letter, the petitioner asked if the State would agree to a sentence of twenty-five years, with release eligibility after service of eighty-five percent of the sentence. Counsel stated that he told the petitioner that with a sentence requiring that one hundred percent be served in confinement, the petitioner could potentially earn fifteen percent "good time" credits. Nevertheless, he cautioned the petitioner to assume that a one hundred percent sentence would have to be served completely in confinement because a fifteen percent reduction in sentence was a possibility but was not guaranteed.

The petitioner testified that he spoke with counsel two or three times prior to entering his guilty pleas. He stated that "all [counsel] did was went over the motion discovery." Counsel told the petitioner that the State offered to allow him to plead to a sentence of thirty-five years to be served at one hundred percent. The petitioner asked counsel to try for a lower sentence. Counsel then advised the petitioner that a sentence of twenty-five years at one hundred percent was the shortest sentence the State would accept.

Regarding the photographic lineup, the petitioner said:

> The only thing that was missing was that they had pictures or a photograph that looked like me and that they showed me a photo lineups of me in the photo lineup, but at no point or time did it say that the victim could identify me in any picture of me.

The petitioner stated that there was no physical evidence linking him to the crimes. The petitioner maintained that counsel did not interview the State's witnesses nor did he file any motions. The petitioner said that he was relying on counsel's advice in the case. The petitioner claimed that he did not feel that he had been adequately represented and would like the opportunity to go to trial.

The petitioner testified, "I don't recall telling [counsel] anything about it, but there was an incident when being questioned in the Sumner County Jail by the TBI agents that I was under the influence of drugs." The petitioner alleged that was "the statement that they got on me." The petitioner said that counsel asked him if he was under the influence of an intoxicating substance at the time he gave his statement; however, the petitioner said that he never informed counsel that he

-4-

was under the influence of drugs or alcohol at the time he gave his statement to police. The petitioner acknowledged that he had been incarcerated for two or three months prior to giving his incriminating statement to police.

The petitioner testified that he had only a limited amount of time to consider the State's offer of twenty-five years because he was "in court when they presented it to me." However, on cross-examination, he admitted that one month before he accepted the offer, he wrote a letter to the district attorney's office requesting a sentence of twenty-five years to be served at eighty-five percent. Thereafter, the petitioner acknowledged that he was not rushed into accepting the sentence.

The petitioner said that trial counsel advised him that the sentencing agreement called for service of one hundred percent of the sentence in confinement. The petitioner acknowledged that counsel never told him that he would be able to serve only eighty-five percent of the sentence in confinement. The petitioner was not informed that he could potentially earn fifteen percent good time credits. He said, "[A]s for right now and while I was in court, all I can do was 100 percent. That's what I was going to do."

At the conclusion of the post-conviction hearing, the post-conviction court denied the petition for relief. The court found that the petitioner did not meet his burden of establishing the ineffectiveness of counsel by clear and convincing evidence. On appeal, the petitioner contests the post-conviction court's ruling.

## II. Analysis

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.2 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. Additionally,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697, 104 S. Ct. at 2069). Moreover, in the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985).

On appeal, the petitioner alleges that counsel was ineffective because he failed to interview witnesses, investigate the case, follow up on an alternate person being identified from a photographic lineup, pursue the lack of physical evidence against the petitioner, meet with the petitioner more than three times, request a hearing, file pretrial motions, ask the petitioner if he was under the influence at the time of his statement, and advise the petitioner regarding sentencing reductions.

We note that trial counsel testified that he asked the petitioner if he was under the influence of any intoxicating substance at the time of his statement, and the petitioner said that he was not. Additionally, counsel stated that he advised the petitioner that he could potentially earn a fifteen percent reduction in his sentence but such a reduction was not guaranteed. Moreover, while the petitioner complains about counsel's lack of investigation, failure to file motions, failure to meet more frequently with the petitioner, or request a hearing, the petitioner does not state what could have been accomplished had such measures taken place. The petitioner did not testify regarding any witnesses that counsel should have investigated or any proof counsel should have uncovered. Generally, "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). We may not speculate on what benefit witnesses might have offered to the petitioner's case, nor may we guess as to what evidence further investigation may have uncovered. Id. The petitioner put on absolutely

no proof to indicate what prejudice he suffered as a result of any alleged deficiency on the part of counsel.  Therefore, the petitioner has failed to establish that he is entitled to relief.

## III.  Conclusion

Finding no error, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE